## UNITED STATES v. LOMEN & CO.

No. 2880.

Second Division.

Nov. 5, 1921.

2

Wm. Fred Harrison, U. S. Atty., of Juneau, for the United States.

Lyons & Orton, of Seattle, Wash., for defendant.

HOLZHEIMER, District Judge.

This cause was heard on demurrer on October 29, 1921; both parties appearing by their respective counsel. After listening to the arguments and being fully advised in the premises, the court finds:

This is a case brought by the United States of America against Lomen & Co., a corporation, commencing said action by a complaint, alleging, among other things:

(1) That on October 20, 1909, the United States was the owner of that certain herd of reindeer known as the Teller Mission Herd, consisting of 245 male and 186 female deer, being the same herd referred to in a certain contract made and entered into on the same date, to wit, October 20, 1909, marked "Exhibit A" and made a part

of said complaint; therefore it is a component part thereof and must necessarily be taken as such and considered.

(2) The reindeer in question, being the property of the United States of America, and held by what is known as the Alaska mission, in trust for the United States of America, to be handled by said mission according to the terms of the aforesaid written contract.

(3) That, contrary to and in violation of the terms and conditions of said contract, the mission, on January 1, 1916, sold and delivered said reindeer, including the females, to Lomen & Co., and that said Lomen & Co. are unlawfully withholding said female reindeer and the increase thereof, since January 1, 1916, from the plaintiff, the United States of America, although due demand has been made upon it therefor; and praying that judgment be entered against the defendant company directing a resulting trust upon said female reindeer and the increase thereof from January 1, 1916, now in the possession of Lomen & Co., its servants, agents, and so forth, in favor of the United States, and that the United States be adjudged the lawful owner and entitled to the possession of said female reindeer and the increase thereof since January 1, 1916; that said defendant, Lomen & Co., has no right, title, and interest in and to said female reindeer, and they be compelled to account to plaintiff for said female reindeer and their increase since January 1, 1916.

To this complaint the defendant interposed a demurrer alleging several grounds of demurrer; for the purpose of this opinion we will consider only one, the fourth, which goes to the heart of the action and, in the opinion of the court, is decisive.

The first and all-important step to be considered is whether or not the United States of America is the owner of the female reindeer in question. We must necessarily and can only gather this from the complaint and contract, which is made a part thereof.

While it is admitted the complaint alleges this to be a fact, the contract shows that this is not true; on the contrary nowhere in said contract does it state that the United States is the owner. Whatever deer held by the mission belonging to the United States were returned to the United States on September 15, 1905, in accordance with a previous agreement, and conclusively shows the United States of America exercised no right or ownership over the original reindeer in question, by claiming a forfeiture for the violation of any of the covenants in the agreement therein contained against all the surplus reindeer then in possession of the mission and not distributed in accordance with the terms of said contract, then only when desired by the United States of America, especially disclaiming any ownership or right of possession to the 245 male and 186 female reindeer. So no matter if the mission violated every covenant in the agreement, the only penalty, as disclosed by the agreement, is the forfeiture of the reindeer, if any, then remaining in the hands of the mission over and above said 245 male and 186 female reindeer, which were the natural increase of said herd.

While it is true that section 6 of said agreement specifically states that the mission shall not dispose of any female reindeer to any one except the government of the United States or the natives, and then only to natives upon written consent of the superintendent of schools or duly authorized agent of the government, placing on the same a price not to exceed $25 a head, this of itself discloses the further fact that the government did not claim actual ownership of any of the deer, increase, or otherwise, if so, why would the government have to pay not to exceed $25 per deer if they were the owners thereof?

No; these contracts were entered into by and between the government of the United States and the various missions for the purpose of general distribution of deer among the natives, protecting their welfare and educating them so that they might finally become self-supporting; the gov-

ernment, through its various agencies, assisting in furnishing instruction, aid, support, and sometimes reindeer to further this plan. As a consideration for this governmental help, the missions, having the same purpose in view, agreed to handle these native apprentices and distribute among them, in payment for their labor, the natural increase from their herds in accordance with the terms of their contract with the government; the government having in view, at all times, the ultimate retirement from the reindeer industry, however, exercising only the right of control and not ownership, unless for the violation of some covenant they would forfeit the increase to the government.

It would be unfortunate indeed if all the other contracts are like the one before us; there is no time limit to the contract; it is uncertain, indefinite, and necessarily bad. While this question has not been raised by either party, it appeals to the court very strongly.

Now this brings us to another question: Whether or not the government not being the owner of any particular herd of reindeer can prevent the owner thereof from disposing, by sale or otherwise, of their deer, whether male or female. To solve this problem, we must turn to the laws on the subject and see if Congress has passed any acts with reference thereto. I can find no law or regulation cited by either party or from personal research that would give the government that right; I can find no law that says a white man cannot own deer. There seems to have been some regulation in the early history of the industry in Alaska with reference to government owned deer and those disposed of by the government to the natives, as to the killing of females; that regulation was made for the good and wholesome reason to perpetuate propagation and successfully advance the reindeer industry in Alaska.

Now, if there be no law or governmental regulation against the white man owning reindeer or the selling of the same, the government is in no different position than

an individual, and cannot be given any such right by the courts, either at law or in equity. This can only be done by agreement, and such agreement must be based upon a legal and reasonable consideration; certainly no one would say that the government wants something for nothing.

Returning to the contract under consideration, we find therein stated: That the government can, if they desire or elect, forfeit for a breach of any of the covenants of the agreement the surplus reindeer over and above the 245 male and 186 females, which are the natural increase; that is, if any there be after distribution in accordance with the terms of said agreement.

This "forfeiture" clause admits ownership in the mission and disclaims any ownership by the government. One cannot gather from the complaint that there was a breach of any of the covenants with reference to the care and distribution, or that there was any excess left after said distribution, or that there had been any demanded back by reason of any forfeiture clause. This forfeiture clause in itself is not self-executing, as it particularly states, "if the Government so desires," and such desire must be directly expressed; if there be a breach of the agreement, such a breach or expressed desire cannot be gathered from the complaint in this case. No breach of the contract having been set out or forfeiture declared, this cause of action cannot prevail.

However, I go further in deciding this demurrer, if every allegation in the complaint were true, and a breach made of every covenant in the contract, and there existed an excess in the natural increase of the mission herd (being the herd in question), and a proper and legal forfeiture declared and demand made, what kind of a judgment could be entered and what is the penalty with reference to the 245 male and 186 female reindeer? I have been unable to reason from any allegation in the complaint or covenants in the contract any judgment that can be legally and properly entered; there are no allegations as to there being any

excess deer on hand, and the last clause of the contract being as follows:

"Twentieth: Party of the second part further agrees in case of failure to comply with any of its obligations under the provisions of this contract, or with any of the sections of the Rules and Regulations regarding the United States Reindeer Service in Alaska, or any revision thereof, from which it is not specifically relieved by the provisions of this contract to forfeit *when desired* by party of the first part, any or all of the reindeer then in its possession above the two hundred and forty-five (245) males and one hundred and eighty-six females to said party of the first part as may be required by party of the first part."

You will observe that this specially excludes the 245 male and 186 female reindeer from any forfeiture whatsoever.

Take the other angle, suppose for a violation of any of the covenants, the 245 male and 186 female deer were not excluded from a forfeiture, the contract would then read "forfeit any and all reindeer *then* in its possession, if the Government so desires."

Now if the deer were all sold and disposed of leaving none to forfeit, what position would the government be in with no other penalty in the agreement than the forfeiture clause; what would be its remedy? I can conceive of none from either angle, in any suit at law or in equity.

For the reasons above stated, the demurrer will be sustained.